Right now, can we hear from the parties in Boyland v. Artus? Good morning, may it please the court, I represent the Boyland, my name is Randa Mayer. Mr. Boyland appeals from a decision in order of the US District Court for the Western District of New York, which denied his petition for state habeas corpus relief. Mr. Boyland is currently serving several concurrent terms of imprisonment of 15 years for three felony weapons convictions, which stem from weapons that were seized from 45 Harvard Place in Buffalo, New York on June 23, 2009. Mr. Boyland's convictions should now be vacated because he was deprived of the effective assistance of counsel. Specifically, Mr. Boyland was represented at trial and on direct appeal by an attorney, Anthony Lana. And Mr. Lana, although he filed a suppression motion, he filed an omnibus motion as well. He was ineffective because he failed to obtain copies of the initial and amended search warrant applications that led to the issuance of an amended warrant, pursuant to which an AG investigator, Michael McCartney, he had previously inspected the second floor of this home and used his observations to then go and get this amended warrant issued. And then following the amended warrant being executed, these weapons were recovered from the second floor of the home. You are on habeas review here, which is necessarily deferential to the state courts. The 440 court reviewed the affidavits and concluded that they stated probable cause in light of that finding. How can we conclude that the state court's denial of your client's ineffective assistance claim falls outside established Supreme Court precedent? It would seem that it's a finding that there was no prejudice, because if you look at the warrants they established, or you look at the affidavits, they established probable cause. Well, to answer your questions, because there's kind of more than one here. First, as far as the warrants that establish a probable cause, the second warrant was based completely on Detective McCartney's walkthrough of this residence. After a SWAT team had gone through there, secured it, and found an AK-47 type of assault rifle, and a replica weapon, at which point McCartney, when McCarthy went up there, he wound up doing a search as well. In his application, he essentially just relied on what he had seen when he went up there. But he also incorporated his initial application. And in that application, there really isn't anything in there to establish probable cause of the criminal possession of a weapon charges, which is. It's not the issue, it's whether there was probable cause to search the premises. And if the legitimate search authorized would have turned up the weapons, that's permissible. Well, arguably, there was a probable cause to search the premises. This was like a debt collection case. We have a state court finding to the contrary, and I'm asking you why we don't defer on that under the principles that inform habeas. Okay, so I can answer that for you, Your Honor. In this particular case, it was a bit convoluted. The 440 court was the same judge who, I think it was Judge Bowler. He relied in denying the 440 motion and issuing a decision. He went back to his decision in the omnibus motion and denying suppression on that, and he basically, it's on page 1053 of the appendix, his decision there. But he says that defendant filed an omnibus motion moving for suppression based upon an invalid search warrant. And that the police search exceeded the scope of the warrant. And here's the important language. Upon review of the application and warrant, this court found that there was probable cause to issue the search warrant. The 440, the suppression court never had the application. The application was never turned over. The application didn't come to light until 2013, January 30th of 2013, when they- Did you just say that the 440 court never had the application? No, I'm not saying that. The 440 court did have the application, but in denying the 440 motion, the court relied on its earlier decision when it denied suppression. It specifically says, that's why I was reading from the language, it's like the second paragraph for the first full paragraph on A1053, and the court specifically, it's the same judge. So he says, he's now deciding the 440-10 motion. He says, upon review of the application and warrant, this court found that there was probable cause to issue the search warrant. In the first sentence, I'm sorry, in that paragraph, it talks about the omnibus motion moving for suppression. So he's basically rubber stamping his prior finding in this- Affidavits. Because nobody had them at that time, because the defense attorney in his omnibus motion- I'm sorry, I don't understand how that could possibly make sense. Maybe you can help me with that. Yeah, I'm- Just a minute. Sure. You're saying to me that the state court judge issued the warrant without there having been an affidavit? That's not what I'm saying. I'm saying, well the state court judge who issued the warrant wasn't the same judge who conducted the suppression hearing. So I'm talking about the judge who conducted the suppression hearing and who decided the suppression motion. You're saying that the suppression judge in the state court had the application, had the warrant, but didn't have the affidavit? No, I'm sorry. He had the warrant order, and he had the return, but he didn't have the application, which included the affidavit. Well, who was the suppression judge? Judge Bowler. And he says right here, upon review of the application, which you just told me includes the affidavit, which is what would be normal. He didn't have the application. That's a- So you're saying his decision is a misrepresentation of fact? Yes, I am. And what's the evidence that that's true? Because if you go back to the record, okay, there was a omnibus motion that was filed by the defense attorney on October 12th of 2009. He requested the warrant applications. On November 18th of 2009, the people gave only the search warrant orders and returns. They asserted that the defense attorney wasn't entitled to the security. Don't you think somewhere in the Supreme Court for Erie County, the application, the affidavit, and the warrant orders were on file? Well, that would be complete speculation. There's nothing on the record showing that, Your Honor. In all due respect, if you would just- So the speculation is you're urging us to find that a state court judge basically lied. No, that's not- He said he had reviewed affidavits. I'm not saying that he lied, and I never said that he lied. Look, if that were a problem, and I'm not dismissing it as beyond the pale, but that's a challenge you have to bring to the state courts. We have a state court record that says that a judge, based on his own review of the affidavits, found probable cause. And you're saying to us we shouldn't credit that. I'm saying that under 2254, the prong that resulted in a decision that was based on a reasonable determination of the facts, in light of the evidence presented in the state court proceeding- You read that very well, but what's it got to do with this point? Let me, if I could beg your indulgence to continue. What it has to do with the point is, if you look at the transcript of the hearing, First off, you look at the documents that were turned over to defense counsel. He requested these applications, which included the affidavits. He wasn't given them. Then you have a hearing. The only evidence introduced at the hearing is the search warrant order. There's no application introduced at the hearing. There's no discussion of applications, and there's little to nothing said about- The judge says, I looked at it. Well, then perhaps it was a mistake. That's what, that's our position. Because, Your Honor, and the reason we believe that that's accurate and not speculation is because the defense doesn't get these warrant applications until three years later, when the defendant himself, pro se- The premise of this argument on your part is, because the defense didn't get the application, specifically the affidavit, it therefore is more likely than not, or even more probable than more likely, that the judge sitting in the court out of which the warrant issued didn't have access to the affidavit and falsely represented in his opinion that he had seen the papers. That's, Your Honor, that's not my position at all, Your Honor. With all due respect, I'm not representing that the judge falsely represented. The warrant applications were signed by an Erie County court judge, Judge Michael Dabico. Judge Bowler conducted the hearing. Looking at the record, as I am bound to do, the record indicates that the applications were requested by the defense attorney. They weren't provided to him. There's no mention of the record at the suppression hearing. The only, I'm sorry, of the application at the suppression hearing. The only time it's mentioned at all is in the judge's 440 decision, I'm sorry, in the judge's suppression decision, denying suppression. And if you look at the record, the only time that we know that these applications were obtained was in 2013 when Mr. Boyland himself put in a FOIL request and got those applications. At which point, he provided them to his new lawyer who attached them to the 44010 that was filed in November 13th of 2013. I'm not disputing- I don't want to reserve time for rebuttal. I'm going to ask you to look at pages A9, 18, and A1053 of the record, because that was where I got the impression that the state court judge had reviewed the affidavits. If that's not how that part of the record should be construed, you'll tell me. We'll hear from you, Mr. Hillary. Thank you, your honors. May it please the court. Excuse me. The judge represented that he received- You can raise. You can raise. Thank you. No, no. Or you can actually raise the entire podium. You see you have a little button on your right. Thank you. That's perfect. Thank you very much. Thank you. Judge Boulder represented that he had the applications. He reviewed them and he factored them into his suppression determination. I'd like to shift focus if I could. I would suggest to us that would have been impossible. Do you want to tell us why it would have been possible for him to have had the application? He was the issuing magistrate, so I'm not quite sure I understand the argument that's been raised. I thought we were just told that the issuing magistrate was a judge in Erie County Court, and that the 440 judge is Justice Buller in Erie Supreme. I apologize, your honor, I misspoke. The representation that we're relying on to say that he reviewed the applications is his own representation. It would be speculation for me as much as it would be for my colleague here, an opposing counsel, to assert how exactly it was. I can speak to how files are transported from one court to another in such matters. But again, there's nothing in the record that would establish that that, in fact, occurred. What we have is the representation of the sitting judge. Was the application in the motion papers or the hearing record before Judge Buller in 2014? I believe it was, your honor, but again, I'm going... And you point to it in the record before? I'm only going, judge, by what he said. I'm only going by his representation that he had them. Help me out with Buffalo geography, because it's a good 30 years since I last visited the city. Is the Supreme Court and the County Court in the same building? Yes, they are, your honor. The clerk's office is on the same floor or different floors? It's on the same floor as Supreme Court. Would the application for the warrant be on file in the building where Judge Buller sits? It should be, your honor. Including the affidavit? It should be. In the ordinary course, that's what would happen, right? Yes, your honor. Would it be sealed or not sealed? It would be sealed, your honor. Okay. With the court's indulgence, I would like to shift focus, if I may. Yes, it would have been good if the defense counsel had actually obtained the applications that he requested. We know he requested them. But on this record, it's ultimately not very important. And the reason is, is because no prejudice has been established by counsel's inability to get those applications. Counsel brought out every single argument that he could conceivably have been brought out in the light of the affidavits, the amended affidavits, because there was no new information in them. The only new information was that Investigator McCartney had gone up himself, immediately after a protective sweep had been conducted, and simply confirmed what he had been told by Officer Savage, who was heading up the SWAT team that did the protective sweep. When that officer said to him, I went up and I observed that certain rooms had been converted. A kitchen had been converted into a laundry room, a living room had been converted into a master bedroom. That was a single house rather than two houses, one on top of the other. They determined upon the protective sweep and then the confirmatory look, if you will, from Investigator McCartney, that it was one family, a one family unit. That issue was raised by counsel. His contention was that McCartney, Investigator McCartney, had no business essentially going up after the protective sweep was conducted. The protective sweep was over, all the concerns that justified that had dissipated, and now he's going up essentially to snoop. And therefore, the amended affidavit is based on that impropriety by Investigator McCartney. Our argument to that is, he learned no new information than what had already been conveyed to him in the lawful exercise of protective sweep by Officer Savage. It was purely confirmatory, and the record bears out repeatedly that no search of either floor was conducted, no true search save a protective sweep was conducted of either floor until the amended search warrant was obtained. So I just fail to see on this record how there's any prejudice made out to the defendant. If the court doesn't have any questions, I'll rest on that. Thank you. Thank you. Jim, you have three minutes. And actually, Judge, I had pulled page A918 myself previously and A1053 because my position is not that the judge deliberately said he read something that he didn't, but that he didn't have it. And the fact that he could have gotten it doesn't mean he did. And according to the record, he says that he denied it based on probable cause. I mean, he couldn't have made a probable cause determination just from the warrant. There was testimony at the hearing, and he based his, he very well could have. The evidence that was in front of him at the hearing was the search warrant order itself and testimony of multiple witnesses. You on habeas is you have to show that the state court decision is contrary to clearly established Supreme Court precedent. Now, I'm not sure what you're saying to us is how you carry your burden. Well, the alternative to that is that, as I had previously referred to, that the state court decision resulted in a decision that was based on an unreasonable determination of the facts. In light of the evidence presented in the state court proceeding. And the evidence in the state court proceeding did not include the search warrant applications. It only had the order, there was no testimony about the applications, and the record as a whole demonstrates that the applications themselves never turned up. That language would not prohibit a judge from taking judicial notice of official court records, would it? It wouldn't, but there's no evidence that he did. The evidence shows- He said right here at page 918. But he may have been mistaken. After review of the first and second warrants and their applications, the court finds that there was probable cause. Your Honor, with all due respect, I know what it says, but he didn't have the applications according to the record to review. He could have made a mistake. People make mistakes, including judges. People make mistakes. That's why we have the appellate court here, because- The judge tells us he reviewed the application. Now, you're telling us he didn't review the application, and I don't know where our factual basis for that is. The basis for that is the record. The record shows that he didn't have the application, wasn't turned over, it wasn't part of the evidentiary hearing. Pardon me? But as Judge Kaplan just said to you, this was a court document, and so it was available to him, and he says he reviewed it. I believe my adversary said it was sealed. It would have been sealed. Well, I guess he could have unsealed it, but- That's not a problem for the judge. Okay, but that's a lot of, with all due respect, Your Honor, that's a lot of speculation. Okay, what the record- If your position was that the judge misspoke on that or deliberately misspoke, why isn't your remedy is to seek review of the 440 decision? I mean, you have an obligation to exhaust that claim if that's your claim, that it was based on, he ruled based on evidence not in the record. Then if that's my obligation, then I would ask this get remanded and have- That's not, I mean, you had an obligation to do that before you brought the habeas. I didn't represent him on the 440. You understand what I'm saying is that the defendant had the obligation to do it before he brought the habeas. That's the law. You have to exhaust your state remedies. You can't now tell us that there was an error in the state court that you didn't try and pursue in the state court. I mean, you're saying to us that we should assume that this document is not in the record, and we're saying to you, when a judge says he's reviewed something and you have not secured a ruling that no, he didn't, why don't we accept his representation? I see your point, Honor, but I do feel that on this record, it's on, there's nothing to support finding that this judge had the application. Nothing except the judge said so, and it's your burden to show otherwise. All right. I know you've tried to make the strongest argument you can for your client, and we've pressed you on this, but thank you very much. We're going to take the matter under advisement. We'll get you a decision as soon as possible. Thank you for your time. Absolutely. The last case on our calendar, Jones versus Yale University, is on submission, so we stand adjourned. Thank you.